BOMIN GREECE S.A.,

                Plaintiff,

v.                                          1:16-CV-1500
                                          (GTS/CFH)

M/V GENCO SUCCESS (IMO 9121730),
her engines, freights, apparel, appurtenances,
tackle, etc., in rem,

                Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

CHALOS & CO., P.C.                        GEORGE M. CHALOS, ESQ.
  Counsel for Plaintiff                        BRITON P. SPARKMAN, ESQ.
55 Hamilton Avenue                        MELISSA D. PATZELT-RUSSO, ESQ.
Oyster Bay, NY 11710

HOLLAND & KNIGHT                     JAMES H. POWER, ESQ.
  Counsel for Defendant and Claimant
31 West 52nd Street
New York, NY 10019

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this maritime action by Bomin Greece S.A. ("Plaintiff") against M/V Genco Success ("Defendant" or the "Vessel"), are the following three motions: (1) Plaintiff's motion to strike the Statement of Interest of Genco Success Ltd. ("Claimant" or "Genco") and enter default judgment in favor of Plaintiff or, in the alternative, motion for summary judgment (Dkt. No. 15); (2) Claimant's motion to vacate the Court's Order for the Maritime Arrest of the Vessel (Dkt. No. 19); and (3) Claimant's cross-motion for an Order, pursuant to Fed. R. Civ. P. 56(d), denying Plaintiff's motion for summary judgment, or

granting a continuance to enable discovery before decision (Dkt. No. 23). For the reasons set forth below, Plaintiff's motion is denied; decision on Claimant's motion to vacate is reserved, pending a hearing; and Claimant's cross-motion is granted.

## I. RELEVANT BACKGROUND

Because the parties have (in their motion papers) demonstrated an adequate understanding of the action's procedural history, the Court will not recite that procedural history in this Decision and Order, which is intended primarily for the review of the parties. Instead, the Court will proceed directly to a summary of the parties' briefing on the three pending motions.

### A. Parties' Briefing on Plaintiff's Motion to Strike Statement and Enter Default Judgment or, In the Alternative, for Summary Judgment

#### 1. Plaintiff's Memorandum of Law

Generally, in support of its motion (filed on February 13, 2017), Plaintiff asserts two arguments. (Dkt. No. 15, Attach. 2.) First, Plaintiff argues, default judgment pursuant to Fed. R. Civ. P. 55 is warranted for the following reasons: (a) the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Admiralty Rule") provide in mandatory terms, in pertinent part, that a person who asserts a right of possession or any ownership interest in the property that is the subject of the action must file a verified statement of right or interest within 14 days after the execution of process, and serve an answer within 21 days after the filing of the statement of right or interest; (b) here, the execution of process (i.e., the Warrant of Arrest) was served on December 20, 2016, rendering the Verified Statement of Interest due on or before January 3, 2017, and the Answer due on or before January 24, 2017; (c) however, neither Claimant nor any other party has complied with either of these deadlines, nor has it shown good cause for failing to do so; and (d) as a result, Claimant's belated Statement of

Interest (filed on January 31, 2017) should be struck, and default judgment should be entered in favor of Plaintiff. (*Id.*)

Second, Plaintiff argues, in the alternative, summary judgment pursuant to Fed. R. Civ. P. 56 is warranted for the following reasons: (a) the agreement for the supply of bunker fuel to Claimant incorporated Plaintiff's General Terms and Conditions (including its provisions for the application and enforcement of a maritime lien against the vessel) and is enforceable under the laws of the United States (as well as, alternatively, the laws of Greece); (b) Plaintiff's General Terms and Conditions apply United States law and give rise to a maritime lien under the Commercial Instrument Maritime Lien Act ("CIMLA"); (c) CIMLA provides Plaintiff with a maritime lien for "necessaries to a vessel on the order of the owner or a person authorized by the owner," because (i) bunkers of fuel are "necessaries" under CIMLA, (ii) the bunkers of fuel were supplied "to a vessel," (iii) the bunkers of fuel were supplied "on the order of . . . a person authorized by the owner" to bind the Vessel, and (iv) Claimant's "Letter of Protest" is nothing more than a "no lien" stamp, which does not provide the required actual notice to the supplier than a lien would not arise; (d) Plaintiff is entitled to costs for arresting the Vessel; and (c) Plaintiff is entitled to an award of prejudgment interest at the rate of nine (9) percent per year. (*Id.*)

### 2. Claimant's Opposition Memorandum of Law

Generally, in opposition to Plaintiff's motion, Claimant asserts three arguments. (Dkt. No. 27.) First, Claimant argues, Plaintiff's motion to strike Claimant's Statement of Interest should be denied for the following reasons: (a) as an initial matter, Claimant's Stipulation of December 21, 2016, contained language constituting the required statement of interest; (b) in any

3

event, Claimant's Statement of Interest of January 31, 2017, was filed as soon as Plaintiff suggested that the aforementioned language in the Stipulation was insufficient; (c) contrary to Plaintiff's suggestion, the Supplemental Admiralty Rules do not speak in mandatory terms but must be applied in the context of account common sense and subject to the district judge's express discretion to extend the time for filing a Statement of Interest; and (d) here, that discretion should be exercised under the circumstances, which include the fact that Plaintiff cannot establish that it has suffered undue prejudice or surprise. (*Id*.)

Second, Claimant argues, Plaintiff's motion for default should be denied for the following reasons: (a) as explained above, Claimant appeared in this action by filing a Stipulation and a valid Statement of Interest (and it would be unfair for Plaintiff to accept Claimant's security deposit and then prevent Claimant from participating in the action); (b) in any event, Plaintiff's motion is procedurally flawed in that it is not accompanied by either a previously entered Certificate of Default or attorney affidavit of service and failure to appear; and (c) moreover, Plaintiff's motion should fail on the merits based on a balancing of the three relevant factors (the willfulness of the default, the meritoriousness of the defense, and the prejudice to the movant). (*Id*.)

Third, Claimant argues, Plaintiff's motion for summary judgment should be denied for the following reasons: (a) the motion is premature in that before it is decided a hearing is necessary under Supplemental Admiralty Rule E(4)(f) and/or discovery is necessary under Fed. R. Civ. P. 56(d) as shown in the required declaration; (b) in any event, Plaintiff's motion must be denied because it relies on inadmissible evidence (i.e., the declaration of a person who has no personal knowledge of the relevant transaction, and an attorney affidavit), which may not be

4

considered; (c) moreover, Plaintiff's motion must be denied because Claimant has adduced admissible evidence that, through the no-lien clause expressly contained in the contract, it provided notice to Petrogal (Plaintiff's agent) that Caltrek (the charterer of the Vessel) was not authorized to bind the Vessel to a maritime lien based on the delivery of fuel; (d) moreover, Plaintiff's motion must be denied because, even if actual notice was required to be given directly to Plaintiff, there are genuine disputes of material fact as to whether (i) Caltrek (the charterer of the Vessel) advised Plaintiff of the no-lien provision contained in the contract at the time of contracting, (ii) the pre-bunkering objection made by Claimant to Petrogal was communicated by Petrogal to Plaintiff, or (iii) other affirmative defenses are available to Claimant in connection with Plaintiff's extension of a 45-day line of credit to Caltrek in connection with the relevant fuel delivery; and (e) even if the Court were to grant summary judgment to Plaintiff on the basis of a maritime lien against the Vessel, Plaintiff would not be entitled to prejudgment interest at the rate of nine (9) percent per year (which is a *post*-judgment rate under a *New York State* statute) but only interest at the current federal prime rate. (*Id.*)

### 3. Plaintiff's Reply Memorandum of Law

Generally, in reply to Claimant's opposition, Plaintiff asserts three arguments. (Dkt. No. 31.) First, Plaintiff argues, its motion to strike Claimant's Statement of Interest should be granted because Claimant's Verified Statement of Interest was late under the rules and was in violation of the mutually agreed security stipulation. (*Id.*)

Second, Plaintiff argues, its motion for default judgment should be granted because, again, Supplemental Admiralty Rule C(6) speaks in mandatory terms, and Claimant's reliance on Local Rule of Practice 55.2 is inapposite given that it was intended is to ensure that parties have sufficient notice (which Claimant did have in this case). (*Id.*)

5

Third, Plaintiff argues, its motion for summary judgment should be granted for the following reasons: (a) the evidence relied on by Plaintiff is admissible and may be used as part of the record in deciding a motion for summary judgment; (b) Claimant's reliance on the notice it arguably gave to Caltrek and Plaintiff ignores the rebuttable statutory presumption that the supplier of necessaries may rely on the credit of the ship in providing goods and services and that the party disputing the existence of the lien bears the burden of proving that the opposite is true, and impermissibly attempts to shift that burden to Plaintiff to explain why it did not receive such notice and why Caltrek was not authorized to bind the Vessel, without sufficiently identifying the potential facts that may be learned in discovery which would defeat Plaintiff's motion for summary judgment; (c) Plaintiff is entitled to prejudgment interest at the applicable New York State statutory rate of nine (9) percent; and (d) in the alternative, to the extent that the Court grants Claimant's request for a stay, Plaintiff requests that the Court order the scheduling of expedited discovery. (*Id*.)

### B.  Statement of Undisputed Material Facts

Generally, unless otherwise noted, the following facts were asserted and supported by Plaintiff in its Statement of Undisputed Material Facts ("Rule 7.1 Statement") and either expressly admitted or denied without an accurate record citation by Claimant in its response thereto ("Rule 7.1 Response"). *Compare* Dkt. No. 15, Attach. 3 [Plf.'s Rule 7.1 Statement, asserting variation of above-stated facts and supporting that assertion with an accurate record citation to admissible record evidence] *with* Dkt. No. 26, at ¶ 1 [Claimant's Rule 7.1 Response].)

1. During the relevant time, Bomin was a foreign corporation organized under the laws of Greece and engaged in the business of providing bunkers of fuel to ships.[1]

2. On or about March 30, 2015, Caltrek Freight and Trading Ltd ("Caltrek"), as charterers of the M/V GENCO SUCCESS ("the Vessel"), entered into an agreement with Plaintiff to provide bunkers of fuel for delivery to the Vessel at the port of Lisbon, Portugal.[2]

3. On March 30, 2015, Bomin confirmed the order with Caltrek at a rate of USD 320.00 per MT of IFO-380 CST (plus associated barging fee of USD 6,500 and agency fee of USD 4,000) to be delivered to the Vessel on April 5, 2015.[3]

---

[1] (*Compare* Dkt. No. 15, Attach. 3, at ¶ 1 [Plf.'s Rule 7.1 Statement, asserting variation of above-stated facts and supporting that assertion with an accurate record citation to admissible record evidence] *with* Dkt. No. 26, at ¶ 1 [Claimant's Rule 7.1 Response, failing to deny that Plaintiff engaged in the business of providing bunkers of fuel to vessels, and incorrectly suggesting that a verified pleading is not admissible record evidence on a motion for summary judgment].) *See also Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.").

[2] (*Compare* Dkt. No. 15, Attach. 3, at ¶ 2 [Plf.'s Rule 7.1 Statement, asserting variation of above-stated facts and supporting that assertion with an accurate record citation to admissible record evidence] *with* Dkt. No. 26, at ¶ 2 [Claimant's Rule 7.1 Response, effectively denying, with accurate record citations, all but the above-stated facts].)

[3] The Court notes that, in its denial of the above-stated fact, Claimant incorrectly implies that a custodian (or other qualified witness) of contemporaneously made records that are kept in the regular course of business (and have not been shown to be untrustworthy) for purposes of Fed. R. Evid. 803(6), may not serve as a competent affiant regarding those records for purposes of a motion for summary judgment (which requires merely that the material contained in the exhibits "can[] be presented in a form that would be admissible in evidence [at trial]"). Fed. R. Civ. P. 56(c)(2). (*See also* Dkt. No. 15, Attach. 4, at ¶¶ 4-5 [Bereilh Decl., stating that he is the Managing Director of Bomin and he bases his assertions on "official company records"].) The Court notes also that, while Claimant may be correct that barging fees and agency fees are not considered "necessaries" under the Commercial Instruments and Maritime Lien Act, 46 U.S.C. § 31341 et seq., the above paragraph does not assert that the

4. On March 30, 2015, Bomin provided Caltrek with a copy of the Confirmation of Order for delivery of bunkers of fuel at the aforementioned rate to the Vessel to be delivered at Lisbon, Portugal, on April 5, 2016.

5. The Confirmation of Order states as follows, in pertinent part:

> We confirm you to arrange / having arranged the following bunker supplies as follows
>
> Master and/or Owner and/or Charterer and/or
>
> Operator and/or Manager of the M/V GENCO SUCCESS
>
> Customer    Caltrek Freight and Trading Ltd. . . . .[4]

6. The Confirmation of Order expressly states, in pertinent part, that "[t]his transaction will be governed by [Bomin's] General Conditions of Sale and Delivery . . . a copy of which accompanies this Confirmation, and also available [sic] at www.bominflot.net.[5]

---

referenced fees constitute "necessaries," and a denial must address an *asserted* fact, not an *implied* fact. *See, e.g., Yetman v. Capital Dis. Trans. Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (Suddaby, J.) (citing authority for the point of law that the summary judgment procedure involves the disputation of asserted facts, not the disputation of implied facts); *cf. Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (noting that plaintiff's responses failed to comply with the court's local rules where "Plaintiff's purported denials . . . improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts"); *Goldstick v. The Hartford, Inc.*, 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (striking plaintiff's Rule 56.1 Statement, in part, because plaintiff added "argumentative and often lengthy narrative in almost every case the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make").

[4] (*Compare* Dkt. No. 15, Attach. 3, at ¶ 5 [Plf.'s Rule 7.1 Statement, asserting variation of above-stated facts and supporting that assertion with an accurate record citation to admissible record evidence] *with* Dkt. No. 26, at ¶ 5 [Claimant's Rule 7.1 Response, effectively denying all but the above-stated facts].)

[5] (Dkt. No. 15, Attach. 3, at ¶ 6 [Plf.'s Rule 7.1 Statement, asserting variation of above-stated facts and supporting that assertion with an accurate record citation to admissible record evidence].)

7. Bomin's General Conditions of Sale and Delivery state, in pertinent part, as follows:

> 1.1 "Seller" shall mean any of the BOMINFLOT International Group of Companies, including its servants, agents, brokers, designated representatives, subsidiaries or affiliates wherever applicable.
> 1.2 "Buyer" shall mean the party and/or parties contracting to buy products and/or services as set out in the Seller's Confirmation of Order for Products and/or Services, including its servants, agents, brokers, designated representatives, subsidiaries or affiliates wherever applicable.
>
> . . .
>
> 7.14 . . . The Supplier's right to apply and enforce a maritime lien will not be altered, waived or impaired by the application to the Bunker Delivery Note of any disclaimer stamp.
> 9.1 Irrevocable payment shall be made by Buyer in full, as directed by Seller, within the time specified in the Contract. Timely payment is of the essence. . . .
>
> . . .
>
> 18.1 This Agreement is subject to General Maritime Law of the United States of America, place of jurisdiction the United States of America, or any other law and jurisdiction as specified in the Contract. However, nothing in this clause shall preclude Seller, in event of a breach of this Agreement by the Buyer, from taking any such action or actions as it shall in its absolute discretion consider necessary to enforce, safeguard or secure its rights under this Agreement in any court or tribunal of any state or country, including, but not limited to the action to enforce its rights of lien against ships, the existence and procedure of enforcement of such right of lien being determined by the local law of the place where enforcement is sought, or to otherwise obtain security by seizure, attachment or arrest of assets for any amount(s) owed to Seller.

8. Bomin currently possesses no records documenting that, before delivery, it was notified by either Caltrek or the Vessel's owner, Genco Success Ltd. ("Genco"), of an objection to the Confirmation of Order or Bomin's General Conditions of Sale and Delivery.[6]

---

[6] (*Compare* Dkt. No. 15, Attach. 3, at ¶ 9 [Plf.'s Rule 7.1 Statement, asserting variation of above-stated facts and supporting that assertion with an accurate record citation to admissible record evidence] *with* Dkt. No. 26, at ¶ 9 [Claimant's Rule 7.1 Response, effectively denying all but the above-stated facts].)

9. On April 4, 2015, Galp Energia and/or Petrogal ("for account of" Bomin) delivered 250,549 MT of IFO-380 CST to the M/V GENCO SUCCESS at Lisbon, Portugal.[7]

10. According to documents and information obtained from Bomin's employees and representatives, the bunkers of fuel supplied to the M/V GENCO SUCCESS at Lisbon were necessary to the accomplishment of her mission, namely, trade worldwide as a commercial ship.[8]

11. Bomin currently possesses no records documenting that, before delivery, it received actual notice from either Caltrek or Genco that Caltrek was not authorized to bind the Vessel with respect to the bunkers of fuel provided at Lisbon.[9]

12. According to Bomin's standard internal procedures, the bunker delivery receipt for the supply of fuel to the M/V GENCO SUCCESS at Lisbon would have been sent to Bomin's Accounting Department, as proof of the exact quantity of fuel supplied and the precise date when delivery took place.[10]

---

[7] (*Compare* Dkt. No. 15, Attach. 3, at ¶ 10 [Plf.'s Rule 7.1 Statement, asserting variation of above-stated facts and supporting that assertion with an accurate record citation to admissible record evidence] *with* Dkt. No. 26, at ¶ 10 [Claimant's Rule 7.1 Response, effectively denying all but the above-stated facts].)

[8] (*Compare* Dkt. No. 15, Attach. 3, at ¶ 11 [Plf.'s Rule 7.1 Statement, asserting variation of above-stated facts and supporting that assertion with an accurate record citation to admissible record evidence] *with* Dkt. No. 26, at ¶ 11 [Claimant's Rule 7.1 Response, effectively denying all but the above-stated facts]; *see also* Dkt. No. 1, Attach. 1, at ¶ 3 [Plf.'s Verification, stating basis for Plaintiff's belief of the truth of the Complaint's allegations].)

[9] (*Compare* Dkt. No. 15, Attach. 3, at ¶ 12 [Plf.'s Rule 7.1 Statement, asserting variation of above-stated facts and supporting that assertion with an accurate record citation to admissible record evidence] *with* Dkt. No. 26, at ¶ 12 [Claimant's Rule 7.1 Response, effectively denying all but the above-stated facts].)

[10] (*Compare* Dkt. No. 15, Attach. 3, at ¶ 13 [Plf.'s Rule 7.1 Statement, asserting variation of above-stated facts and supporting that assertion with an accurate record citation to admissible record evidence] *with* Dkt. No. 26, at ¶ 13 [Claimant's Rule 7.1 Response, effectively denying all but the above-stated facts].)

13. For this transaction, Bomin's Accounting Department issued Invoice No. 02808, dated April 15, 2015, in connection with order number ID 609443 and delivery of bunker fuel on April 4, 2015, for the total sum of USD 90,675.68, and addressed that invoice to, *inter alia*, "Master and/or Owner and/or Charterer and/or Operator and/or Manager of the M/V GENCO SUCCESS."[11]

14. Despite Bomin's issuance of the aforementioned Invoice, the outstanding principal balance of USD 90,675.68 (exclusive of interest and costs), remains undisputedly due and owing to Bomin.[12]

### C. Parties' Briefing on Claimant's Motion to Vacate

#### 1. Claimant's Memorandum of Law

Generally, in support of its Supplemental Admiralty Rule E(4)(f) motion to vacate the arrest of the Vessel, Claimant argues that Bomin does not have a maritime lien under CIMLA for the following four reasons: (1) a maritime lien does not arise (due to the ordering of necessaries

---

[11] (*Compare* Dkt. No. 15, Attach. 3, at ¶ 14 [Plf.'s Rule 7.1 Statement, asserting variation of above-stated facts and supporting that assertion with an accurate record citation to admissible record evidence] *with* Dkt. No. 26, at ¶ 14 [Claimant's Rule 7.1 Response, effectively denying all but the above-stated facts].) The Court notes that, while Claimant may be correct that the act of addressing an invoice to an entity does not (in and of itself) establish that the entity was a party to the underlying contract, the above paragraph does not assert that Genco was a party to the contract, and a denial must address an asserted fact, not an implied fact. *See, e.g., Yetman*, 2015 WL 4508362, at *10.

[12] (*Compare* Dkt. No. 15, Attach. 3, at ¶ 16 [Plf.'s Rule 7.1 Statement, asserting variation of above-stated facts and supporting that assertion with an accurate record citation to admissible record evidence] *with* Dkt. No. 26, at ¶ 16 [Claimant's Rule 7.1 Response, effectively denying all but the above-stated facts].) The Court notes that, while Claimant objects that the above paragraph incorrectly implies that the principal balance is owed by Genco instead of Caltrek, that Bomin is entitled to a lien against the Vessel, and that the lien covers barging and agency fees, the above paragraph does not assert those facts, and a denial must address asserted facts, not implied facts. *See, e.g., Yetman*, 2015 WL 4508362, at *10.

by one without authority to bind the vessel), where the vessel owner can show that the supplier of necessaries had actual knowledge of the existence of any lack of authority relied upon as a defense; (2) here, the supplier of necessaries (Petrogal) had actual notice of (a) the no-lien clause expressly contained in the relevant contract before the bunkering of fuel and (b) the follow-up letter of protest made by agents of the owners of the vessel (Genco); (3) furthermore, if Petrogal breached its duty to communicate this no-lien clause to the seller of necessaries (Bomin), then such a breach of duty of "good business practice" should not result in a maritime lien against the vessel but a claim by Bomin against Petrogal; and (4) even if actual notice was required to be made directly to Bomin, at the very least a dispute of material fact exists as to whether that actual notice was made in this case. (Dkt. No. 19, Attach. 1.)

2. **Plaintiff's Opposition Memorandum of Law**

Generally, in opposition to Claimant's motion's motion to vacate, Plaintiff asserts three arguments: (1) CIMLA provides Plaintiff with a maritime lien, because the lien was for "necessaries" (specifically, bunkers of fuel) supplied to the Vessel on the order of a person (specifically, an agent of Caltrek) who was presumed under CIMLA to be authorized to bind the Vessel for necessaries; (2) the aforementioned presumption has not been rebutted by Claimant, because it has not persuasively shown that the supplier of the bunkers of fuel (specifically, Petrogal) had *actual knowledge* that Caltrek was not authorized to bind the Vessel through Caltrek's presentation to Petrogal of a "notice of protest and objection request," which Petrogal denies ever receiving; and (3) furthermore, the other forms of purported notice (specifically, the pre-bunkering oral statements by Caltrek's agents to the captain of Petrogal's bunker-supply barge (M/T SACOR II), and the post-bunkering "letter of protest" from Genco to Petrogal),

which are mere no-lien stamps, are insufficient to confer actual knowledge to Petrogal. (Dkt. No. 28.)

### 3. Claimant's Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition, Claimant asserts three arguments: (1) as acknowledged by Plaintiff, no maritime lien attaches to a vessel pursuant to CIMLA, where actual notice of a no-lien clause (and/or a lack of authority of a charterer to bind the vessel) was clearly and unambiguously provided to the supplier of necessaries before delivery of those necessaries; (2) here, Claimant has adduced two affidavits (from the Master and Chief Engineer of the Vessel, Qiao Jun Zhi and Zhuang Shao Guang) attesting to the fact that, at a pre-bunkering meeting, actual notice was provided to the supplier of the bunker fuel oil (Petrogal) or its agents (including employees of Petrogal's bunker-supply barge, M/T SACOR II) of the no-lien clause and the lack of authority of the charterer (Caltrek) to bind the Vessel, and Plaintiff's affidavit to the contrary (from Petrogal's Marine Sales Manager, Luis Sampaio Nunes) is ineffective because (a) it contains no indication he was present at the pre-bunkering meeting, and (b) it incorrectly attempts to argue that the arrival of the bunker-supply barge M/T SACOR II alongside the Vessel for the pre-bunkering meeting constituted delivery, rendering the notice at the meeting late; and (3) contrary to Plaintiff's argument, the express in-person no-lien notice provided by the agents of the owner of the Vessel (Genco) to the supplier (Petrogal) *before* the delivery of the fuel oil is not akin to a no-lien stamp (which *post*-dates delivery). (Dkt. No. 30.)

### D. Parties' Briefing on Claimant's Cross-Motion for Further Discovery

#### 1. Claimant's Memorandum of Law

Generally, in support of its cross-motion, Claimant argues that discovery is necessary under Fed. R. Civ. P. 56(d) as shown in the required declaration. (Dkt. No. 27.) More

13

specifically, Claimant argues that the facts its seeks (presumably through document requests, interrogatories and/or depositions) are as follows: (a) evidence (including but not limited to correspondence) regarding Plaintiff's alleged notice of the no-lien provision of the contract by Caltrek at the time of contracting; (b) evidence (including but not limited to correspondence) regarding Plaintiff's alleged notice of the no-lien provision and/or charterer's lack of authority to bind the Vessel to a maritime lien as communicated by Petrogal prior to the loading of bunkers on the Vessel; and (c) evidence regarding whether Plaintiff should be denied a maritime lien against the Vessel based on any other affirmative defenses, such as Plaintiff's extension of credit to Caltrek beyond industry standards despite indications of a lack of creditworthiness. (*Id*.) Moreover, Claimant argues, these facts are reasonably expected to create a genuine dispute of material fact because, if evidence of such notice exists, it would support a juror's rational finding that, *inter alia*, (i) Caltrek (the charterer of the Vessel) advised Plaintiff of the no-lien provision contained in the contract at the time of contracting, and/or (ii) the pre-bunkering objection made by Claimant to Petrogal was communicated by Petrogal to Plaintiff. (*Id*.) Furthermore, Claimant argues that, while it has not yet made efforts to obtain these facts, it has been unable to make such efforts because discovery has not yet begun nor discovery conferences held (due to the parties' efforts to engage in settlement discussions). (*Id*.) Finally, Claimant argues, it has supported these arguments with a declaration. (Dkt. No. 25, at ¶¶ 18-31.)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Claimant's cross-motion, Plaintiff argues that Claimant fails to sufficiently identify the potential facts that may be learned in discovery which would defeat Plaintiff's motion for summary judgment. (Dkt. No. 31.) More specifically, Plaintiff argues

that, given the facts that are undisputed thus far, Claimant's request for further facts is both futile and contrary to the relevant legal standard on the pending claims and defenses, which places the burden on Claimant to provide proof of notice (not Plaintiff's burden to find proof of non-notice). (*Id.*)

## II. GOVERNING LEGAL STANDARDS

Because the parties have (in their motion papers) demonstrated an adequate understanding of legal standards governing the three pending motions and the pending claims and defenses, the Court will not recite those legal standards in this Decision and Order, which (again) is intended primarily for the review of the parties. Instead, the Court will reference those legal standards only where necessary below in Part III of this Decision and Order.

## III. ANALYSIS

### A. Plaintiff's Motion to Strike Statement and Enter Default Judgment or, In the Alternative, for Summary Judgment

After carefully considering the matter, the Court denies Plaintiff's threshold motion to strike Claimant's Verified Statement of Interest and nunc pro tunc extends the deadline for the filing of that Statement to January 31, 2017, because the Court finds that Claimant has shown excusable neglect for purposes of Fed. R. Civ. P. 6(b)(1)(B). The Court renders this finding for the reasons stated in Claimant's opposition memorandum of law. *See, supra,* Part I.A.2. of this Decision and Order. Among these reasons is the lack of prejudice to Plaintiff.

Moreover, the Court denies Plaintiff's related motion for default judgment for the reasons stated in Claimant's opposition memorandum of law. *See, supra,* Part I.A.2. of this Decision and Order. To those reasons, the Court would add only two points. First, not only did Plaintiff not comply with Local Rule of Practice 55.2's requirement that it attach to its motion the Clerk's

certificate of entry of default, Plaintiff did not comply with Fed. R. Civ. P. 55(a)'s requirement that, before a plaintiff files a motion for default judgment, it must obtain the clerk's entry of default. Second, while Plaintiff argues that the intent of these rules is to give a defendant notice of the action, it appears to the Court that the intent is also to give a defendant notice of its dilatory behavior, notice of the plaintiff's intent to file a motion for default judgment, and an opportunity to cure its dilatory behavior before that filing. In any event, the Court has, in the past, rather strictly enforced Fed. R. Civ. P. 55(a)'s requirement, regardless of its perceived intent.

Finally, the Court denies Plaintiff's alternative motion for summary judgment. As an initial matter, the Court finds that more discovery is required for the reasons stated by Claimant. *See, supra,* Part I.A.2. of this Decision and Order. To those reasons, the Court adds that it disagrees with Plaintiff to the extent that Plaintiff argues that a non-movant on a motion for summary judgment is never entitled under Fed. R. Civ. P. 56(d) to additional discovery to meet its burden on the movant's claim or the non-movant's own affirmative defense(s), especially where the movant is relying on an affiant, whom the non-movant has never had the opportunity to examine in a deposition. The Court notes also that among the facts that it understands Claimant will attempt to obtain in discovery is whether, before delivery of the bunkers, Genco and/or Caltrek gave actual notice to Petrogal or its agents that Caltrek was not authorized to bind the Vessel with respect to the bunkers.

For all these reasons, the Court denies Plaintiff's motion to strike Claimant's Statement of Interest and enter default judgment in Plaintiff's favor or, in the alternative, motion for summary judgment.

B.     **Claimant's Motion to Vacate**

After carefully considering the matter, the Court is inclined to agree with the arguments presented in the memoranda of law in support of Claimant's motion to vacate. *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order. However, the Court is mindful of (1) the question of fact that appears to have been created by the dueling affidavits of the parties (i.e., the affidavits of the Master and Chief Engineer of the Vessel on the one hand, and the affidavit of Petrogal's Marine Sales Manager on the other hand), and (2) Claimant's right to a prompt hearing on its motion under Supplemental Admiralty Rule E(4)(f) at which Plaintiff must show why the arrest of the Vessel should not be vacated.[13] As a result, the Court will reserve decision on Claimant's motion to vacate, pending the outcome of such a hearing.

The parties are advised that, at the hearing, the Court is particularly interested in the following facts: (1) who attended, and what happened, at the pre-bunkering meeting on board Petrogal's bunker-supply barge, M/T SACOR II, on April 4, 2015; (2) following Petrogal's rejection of Genco's notice of protest and objection to any lien, when, how, and to whom the Master and Chief Engineer of the Vessel continued to protest that no lien was created; (3) following the aforementioned rejection, when, how and why Petrogal proceeded with the transfer of fuel oil from the barge to the Vessel as ordered by the charterer, Caltrek; and (4) what personal knowledge Petrogal's Marine Sales Manager has (if any) regarding what happened at the pre-bunkering meeting.

---

[13]     The Court notes that, although Local Admiralty Rule e(8) requires that such hearing occur seven days within the filing of a motion to vacate unless the Court orders otherwise, the Court finds that grounds exist to hold that hearing outside the seven-day period under the circumstances, because of (1) the filing of the two other motions addressed in this Decision and Order, and (2) congestion on the Court's docket.

17

C. **Claimant's Cross-Motion for Further Discovery**

After carefully considering the matter, the Court grants Claimant's cross-motion for the reasons stated in Claimant's memorandum of law and Part A of the Analysis Section of this Decision and Order. *See, supra,* Parts I.D.1. and III.A. of this Decision and Order. The Court notes that, with regard to Plaintiff's alternative request for expedited discovery (presented for the first time in their joint reply/opposition brief), the Court denies that request without prejudice, because the issues presented by that request (including whether expedited discovery would provide Claimant with an adequate opportunity to discover the facts identified) are, under the circumstances, best left to the sound discretion of United States Magistrate Judge Christian F. Hummel.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion to strike Claimant's Statement of Interest and enter default judgment in favor of Plaintiff or, in the alternative, motion for summary judgment (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED** that decision on Claimant's motion to vacate the Court's Order for the Maritime Arrest of Claimant Vessel (Dkt. No. 19) is **RESERVED** pending a **hearing**; and it is further

**ORDERED** that counsel are directed to appear on **APRIL 13, 2017 at 9:30 am** in Syracuse, NY before Chief Judge Glenn T. Suddaby for the above-referenced hearing. Any witness and exhibits lists are due by April 10, 2017; and it is further

**ORDERED** that Claimant's cross-motion for an Order, pursuant to Fed. R. Civ. P. 56(d), denying Plaintiff's motion for summary judgment, or granting a continuance to enable discovery before decision (Dkt. No. 23) is **GRANTED**.

Dated: March 31, 2017
Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge